IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

NANCY G. RANDALL,                      )        Civil Action No. 3:04-1712-RBH-JRM
                                       )
            Plaintiff,                 )
                                       )
      v.                               )
                                       )
COMMISSIONER OF SOCIAL SECURITY, )      **REPORT AND RECOMMENDATION**
                                       )
            Defendant.                 )
_____        )

This case is before the Court pursuant to Local Rule 83.VII.02, et seq., D.S.C., concerning the disposition of Social Security cases in this District. Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her claim for Disability Insurance Benefits ("DIB").

## ADMINISTRATIVE PROCEEDINGS

On October 15, 2002, Plaintiff applied for DIB. The application was denied initially and on reconsideration, and she requested a hearing before an administrative law judge ("ALJ"). After a hearing held February 2, 2004, at which Plaintiff appeared and testified, the ALJ issued a decision (dated March 26, 2004) denying benefits, finding that Plaintiff was not disabled because she was able to perform her past relevant work as a teacher's aide.

Plaintiff was fifty-eight years old at the time of the ALJ's decision. She has a high school education and past relevant work as a teacher's aide, food server, and child care worker. Plaintiff alleges disability since October 2, 2002, due to osteoporosis, fibromyalgia,[1] and allergic rhinitis.

---

[1]"Fibromyalgia is a rheumatic disease with similar symptoms [to lupus], including
(continued…)

The ALJ found (Tr. 11-17):

1.    The claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(i) of the Social Security Act and is insured for benefits through the date of this decision.

2.    The claimant has not engaged in substantial gainful activity since the alleged onset of disability.

3.    The claimant's fibromyalgia and osteoporosis are considered "severe" based on the requirements in Regulations 20 CFR § 404.1520(c).

4.    These medically determinable impairments do not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

5.    The undersigned finds the claimant's allegations regarding her limitations are not totally credible for the reasons set forth in the body of the decision.

6.    The claimant has the residual functional capacity to lift and carry 20 pounds occasionally and 10 pounds frequently.  The claimant can stand for 6 hours in an 8-hour workday, walk for 6 hours in an 8-hour workday, and sit for the remaining 2 hours in an 8-hour workday.  Additionally, it could not require climbing, crawling or exposure to hazards or to temperature extremes.

7.    The claimant's past relevant work as teacher's aide did not require the performance of work-related activities precluded by her residual functional capacity (20 CFR § 404.1565).

8.    The claimant's medically determinable fibromyalgia and osteoporosis do not prevent the claimant from performing her past relevant work.

---

[1](…continued)
'significant pain and fatigue,' tenderness, stiffness of joints, and disturbed sleep." Step v. UNUM Life Ins. Co. Of Am., 390 F.3d 301, 302 (4th Cir. 2004)(citation omitted).

9.     The claimant was not under a "disability" as defined in the Social Security Act, at anytime through the date of the decision (20 CFR § 404.1520(e)).

On May 10, 2004, the Appeals Council denied Plaintiff's request for review, making the decision of the ALJ the final action of the Commissioner.  Plaintiff filed this action on May 28, 2004.

The only issues before this Court are whether correct legal principles were applied and whether the Commissioner's findings of fact are supported by substantial evidence.  Richardson v. Perales, 402 U.S. 389 (1971) and Blalock v. Richardson, 483 F.2d 773 (4th Cir. 1972).  Under 42 U.S.C. §§ 423(d)(1)(A) and 423(d)(5) pursuant to the Regulations formulated by the Commissioner, Plaintiff has the burden of proving disability, which is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months...."  See 20 C.F.R. § 404.1505(a) and Blalock v. Richardson, supra.

## DISCUSSION

Plaintiff alleges that: (1) the Commissioner erred in ignoring the opinion of Plaintiff's treating physician; (2) the Commissioner failed to sustain her burden of establishing that there is other work in the national economy that Plaintiff can perform; and (3) the Commissioner erred in evaluating Plaintiff's credibility.

A.     Substantial Evidence

3

Plaintiff alleges that the ALJ's determination that she had the residual functional capacity ("RFC") to perform light work (and thus could perform her past relevant work as a teacher's aide) is not supported by substantial evidence. The Commissioner argues that the ALJ's decision is supported by substantial evidence.

Substantial evidence is:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984); Laws v. Celebreeze, 368 F.2d 640, 642 (4th Cir. 1966). It must do more, however, than merely create a suspicion that the fact to be established exists. See Cornett v. Califano, 590 F.2d 91, 93 (4th Cir. 1978).

The ALJ's determination that Plaintiff can perform light work and thus can perform her past relevant work despite her impairment is supported by substantial evidence including the treatment notes of Plaintiff's treating physician, a consultative examination, the findings of a State agency physician and a State agency psychologist, and non-medical evidence including Plaintiff's activities of daily living.

The ALJ's determination that Plaintiff's allergic rhinitis and mental impairment were not severe impairments[2] is supported by substantial evidence. Although Plaintiff had symptoms of allergic rhinitis, they were resolved with medications. See Tr. 178-189. "If a symptom can be

---

[2]It is the claimant's burden to show that he had a severe impairment. See Bowen v. Yuckert, 482 U.S. 137, 145 n. 5 (1987). A non-severe impairment is defined as one that does not "significantly limit [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1521(a).

reasonably controlled by medication or treatment, it is not disabling." <u>Gross v.</u> <u>Heckler</u>, 785 F.2d 1163, 1165-6 (4th Cir. 1986). Plaintiff reported that Lexapro helped her control her mood swings (Tr. 29-30), but there is no indication that she was ever treated by a mental health professional. <u>See</u> <u>Matthews v. Bowen</u>, 879 F.2d 422, 424 (8th Cir. 1989)(A claimant did not meet her burden of establishing disability due to a mental impairment where the only evidence in the record indicating any emotional problems was her own testimony and that a doctor prescribed antidepressant medication).

Although Plaintiff suffered from the severe impairments of osteoporosis and fibromyalgia, the ALJ's determination that these conditions were not disabling is supported by substantial evidence. Plaintiff was treated for various ailments by Dr. Karen McCutcheon at Primary Medical Associates beginning in April 2000. Tr. 173-229. Dr. McCutcheon prescribed Evista and Calcium with vitamin D for Plaintiff's osteoporosis. Tr. 222. On December 9, 2001, Plaintiff was admitted to Conway Hospital for complaints of chest pain. Tr. 121. Dr. Daniel Gordon observed that Plaintiff was comfortable and did not appear to be in distress. He diagnosed hypertension and hypercholesterolemia and continued her previously prescribed medications. On December 12, 2001, Dr. McCutcheon followed up on Plaintiff's hospital visit. She diagnosed Plaintiff with anxiety and gastroesophageal reflux disease and prescribed Paxil and Nexium. Tr. 221-222. Dr. McCutcheon treated Plaintiff for nausea, dizziness, myalgias, and arthralgias on April 15, 2002. Tr. 214. Plaintiff complained of arm, head, neck, back, and leg pain on September 12, 2002. Dr. McCutcheon prescribed Vioxx. Tr. 200-201. Plaintiff complained of severe fatigue and exhaustion, swelling of her hands, and severe myalgias on October 2, 2002. Dr. McCutcheon diagnosed fibromyalgia and prescribed Robaxin, Vioxx, and Zoloft. Tr. 194-

195.  After October 2002, however, Plaintiff was treated sporadically by Dr. McCutcheon, mostly for other complaints including allergic rhinitis, upper respiratory infections, sinusitis, and urinary tract infections.  See Tr. 180-189.

The ALJ's decision is supported by the findings of consultative physicians who examined her. On February 21, 2003, Plaintiff was examined by Dr. Ivo Anguelov.  Tr. 142-144.  Plaintiff reported that her only medications were Evista for osteoporosis and Claritin D for allergic rhinitis. Dr. Anguelov noted that Plaintiff could move without any significant difficulty and had normal neurological functioning and gait.  He observed that Plaintiff could get on and off the examining table without difficulty; walk without any problems; had negative straight leg raising; had normal passive flexion, rotation and extension; had no significant decrease in range of motion upon active rotation, flexion, and extension; and had no knee or hip tenderness.   Dr. Anguelov stated that he "did not find any significant objective findings" except for some mild tenderness in the muscles of Plaintiff's back.   Tr. 144.   Plaintiff was examined by Dr. Stephen G. Gelfand, a rheumatologist, on September 24, 2002.  Dr. Gelfand found normal proximal muscle strength in Plaintiff's upper and lower extremities, the absence of synovitis or limited motion in any peripheral joint, and the absence of peripheral edema.  He found that Plaintiff had multiple tender points in almost all of the ACR fibromyalgia locations.  Dr. Gelfand's impression was "[c]entral pain sensitivity state, related to increase[d] tension and stress."  Tr. 128.  There is no indication that  Dr. Gelfand placed any restrictions on Plaintiff's ability to work or prescribed any treatment

other than to recommend that she find ways to reduce stress, including relaxation exercises.  Tr. 128.[3]

The ALJ's decision is also supported by the opinion of a State agency physician who reviewed Plaintiff's medical records and completed a physical RFC assessment and a State agency psychologist that completed a psychiatric review technique form.  20 C.F.R. §§ 404.1527(f)(2) and 416.927(f)(2); SSR 96-6p ("Findings of fact made by State agency … [physicians]… regarding the nature and severity of an individual's impairments must be treated as expert opinion of non-examining sources at the [ALJ] and Appeals Council level of administrative review.").  In August 2003, a State agency physician opined that Plaintiff could lift fifty pounds occasionally, twenty-five pounds frequently; stand or walk for six hours in an eight hour workday; sit for six hours in an eight hour day; and push and pull within her lifting capacity.  Tr. 164.  He  also found that Plaintiff could frequently climb ramps, climb stairs, balance, and stoop; could occasionally climb ladders, ropes, or scaffolds; could kneel, crouch, and crawl; and should avoid exposure to extremes in temperature.  Tr. 165, 167.

On March 11, 2003, Dr. Judith Von, a psychologist, completed a psychiatric review technique form in which she opined the Plaintiff's affective disorder was not a severe impairment.  Tr. 145-158.  She concluded that Plaintiff's impairment resulted in only mild restrictions of

---

[3]Plaintiff argues that the ALJ erred in not discussing Dr. Gelfand's findings.  The ALJ's failure is harmless error, as Dr. Gelfand was not a treating physician and his findings were not entitled to controlling weight.  Further, his findings only indicated a general diagnosis that Plaintiff had multiple fibromyalgia tender points without specifying their number or locations.  His diagnosis was not inconsistent with the ALJ's finding that Plaintiff's fibromyalgia was not disabling.

activities of daily living; mild difficulties in maintaining social functioning; mild difficulties in maintaining, concentration, persistence, or pace; and no episodes of decompensation.  Tr. 155.

B.    Treating Physician

Plaintiff alleges that the ALJ erred in ignoring the opinion of her treating physician, Dr. McCutcheon.  The Commissioner argues that the ALJ properly discounted Dr. McCutcheon's opinion of disability because it was unsupported by her own findings and inconsistent with other substantial evidence which the ALJ specifically addressed.

On October 3, 2002, Dr. McCutcheon opined that Plaintiff was "no longer able to work." Tr. 140-141.  On October 19, 2002, Dr. McCutcheon indicated in a "Sick Leave Bank Medical Certification Statement" to Plaintiff's employer that Plaintiff was unable to perform any work due to fibromyalgia; could not bend, stoop, or lift; and could not stand for prolonged periods.  Tr. 138-139.  On October 25, 2002, Dr. McCutcheon submitted a statement to Plaintiff's long term disability insurance provider in which she stated that Plaintiff had fibromyalgia with symptoms of muscle pain and abnormal sleep patterns.  Tr. 135.  She opined that Plaintiff could frequently lift ten pounds, could lift a maximum of fifty pounds; could walk and stand for two hours at a time and two hours total in an eight-hour workday, sit for four hours at one time and (incongruously) for three hours total in an eight-hour workday, occasionally bend or stoop, and frequently grasp or reach.  Dr. McCutcheon stated that she was unable to determine when Plaintiff could return to work.  Tr. 136.  On December 12, 2002, Dr. McCutcheon submitted another "Sick Leave Bank Medical Certification Statement" to Plaintiff's employer in which she opined that the duration of Plaintiff's fibromyalgia was "indeterminate;" prolonged standing, stooping, bending, or lifting aggravated Plaintiff's condition; and Plaintiff would not be able to work a full schedule due to

8

unpredictable flare-ups.  Tr. 131-132.  On October 20, 2003, Dr. McCutcheon completed a physical capacity assessment in which she stated that Plaintiff could walk for one to two hours in an eight-hour workday; stand for one to two hours; sit for two to four hours; lift or carry less than five pounds frequently; lift five to ten pounds occasionally; and was restricted in bending, climbing stairs, and climbing ladders.  Tr. 173-174.  She opined that Plaintiff was capable of performing at least the full range of sedentary work "at times," but she could not work an eight-hour day five days per week.  Tr. 175.

Although it is not binding on the Commissioner, a treating physician's opinion is entitled to great weight and may be disregarded only if persuasive contradictory evidence exists to rebut it.  Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1988); and Foster v. Heckler, 780 F.2d 1125, 1130 (4th Cir. 1986).  In those cases, the court emphasized the importance of giving great weight to the findings of the plaintiff's treating physician.  See also Mitchell v. Schweiker, 699 F.2d 185 (4th Cir. 1983).  The court in Mitchell also explained that a treating physician's opinion should be accorded great weight because "it reflects an expert judgment based on a continuing observation of the patient's condition over a prolonged period of time."  An ALJ, therefore, must explain his reasons for disregarding a positive opinion of a treating physician that a claimant is disabled.  DeLoatche v. Heckler, 715 F.2d 148 (4th Cir. 1983).

The Commissioner is authorized to give controlling weight to the treating source's opinion if it is not inconsistent with substantial evidence in the case record and it is well supported by clinical and laboratory diagnostic techniques.  20 C.F.R. § 404.1527(d)(2).  The Court in Craig found by negative implication that if the physician's opinion "is not supported by clinical evidence

9

or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig, 76 F.3d at 589.

Dr. McCutcheon's statements on October 3 and 19, 2002 consist only of conclusory opinions of disability. An ALJ is not bound by a conclusory opinion of disability or entitlement to benefits, even when rendered by a treating physician, since the issue of disability is the ultimate issue in a Social Security case and that issue is reserved for the Commissioner. See Castellano v. Secretary of Health & Human Servs., 26 F.3d 1027 (10th Cir. 1994); see also King v. Heckler, 742 F.2d 968 (6th Cir. 1984); Montijo v. Secretary of Health & Human Servs., 729 F.2d 599, 601 (9th Cir.1984). There is little indication of treatment of Plaintiff's symptoms of fibromyalgia after October 2002, yet Dr. McCutcheon increased the restrictions on Plaintiff's ability to perform work.

Although the ALJ gave Plaintiff the benefit of the doubt in finding that Plaintiff had the severe impairment of fibromyalgia, he noted that Dr. McCutcheon diagnosed Plaintiff with fibromyalgia without reporting that she had performed the required test of confirming at least eleven of the eighteen trigger points as required under current case law and applicable regulations.[4]

---

[4]The Seventh Circuit noted:
[Fibromyalgia's] cause or causes are unknown, there is no cure, and, of greatest importance to disability law, its symptoms are entirely subjective. There are no laboratory tests for the presence or severity of fibromyalgia. The principal symptoms are "pain all over," fatigue, disturbed sleep, stiffness, and--the only symptoms that discriminates between it and other diseases of a rheumatic character--multiple tender spots, more precisely 18 fixed locations on the body (and the rule of thumb is that the patient must have at least 11 of them to be diagnosed as having fibromyalgia) that when pressed firmly cause the patient to flinch.
Sarchet v. Chater, 78 F.3d 305, 306 (7th Cir.1996). The mere diagnosis of fibromyalgia does not mean that it is disabling. "Some people may have such a severe case of fibromyalgia as to be
(continued...)

As noted by the ALJ, Dr. McCutcheon's opinion is not well supported by her treatment notes. There are very few treatment notes regarding Plaintiff's symptoms of fibromyalgia and Dr. McCutcheon only mentioned trigger points and some back and neck pain on a few occasions. The majority of Plaintiff's visits to Dr. McCutcheon appear to have been for other reasons such as treatment for allergic rhinitis and sinusitis. The ALJ's decision is also supported by the findings of Dr. Anguelov. Dr. Anguelov noted that Plaintiff could move and walk without significant difficulty; had normal gait and neurological functioning; had negative straight leg raising; normal passive flexion, rotation, and extension without significant decrease in ranges of motion upon active rotation, flexion, and extension; and no other significant objective findings. Tr. 143.

C.    Commissioner's Burden

Plaintiff argues that the ALJ failed to sustain her burden of establishing that there is other work in the national economy that Plaintiff can perform because the VE testified that Plaintiff would not be able to return to her past relevant work as a teacher's aide given her impairments and limitations. This argument fails. Although the VE testified that Plaintiff could not return to her past relevant work as a teacher's aide if a sit/stand option was included in the hypothetical question, the ALJ did not find that such a restriction was necessary based on evidence, as discussed above. When the ALJ asked the VE to assume the same hypothetical question, but eliminated the sit/stand option, the VE responded that Plaintiff could perform her past relevant work as a teacher's aide. Tr. 44-45. As Plaintiff did not meet her burden to show

---

[4](…continued)
totally disabled from working, but most do not." Id. at 307 (citations omitted).

that she was unable to perform her past work, she was properly found not disabled.  See Pass v.
Chater, 65 F.3d 1200, 1203, 1206-1207 (4th Cir. 1995), 20 C.F.R. §§ 404.1520(e), 416.920.

     D.    Pain

        In assessing complaints of pain, the ALJ must (1) determine whether there is
objective evidence of an impairment which could reasonably be expected to produce the pain
alleged by a plaintiff and, if such evidence exists, (2) consider a plaintiff's subjective complaints
of pain, along with all of the evidence in the record.  See Craig v. Chater, 76 F.3d 585, 591-92
(4th Cir. 1996); Mickles v. Shalala, 29 F.3d 918 (4th Cir. 1994).  Although a claimant's
allegations about pain may not be discredited solely because they are not substantiated by objective
evidence of the pain itself or its severity, they need not be accepted to the extent they are
inconsistent with the available evidence, including objective evidence of the underlying
impairment, and the extent to which the impairment can reasonably be expected to cause the pain
the claimant alleges he suffers. A claimant's symptoms, including pain, are considered to diminish
his or her capacity to work to the extent that alleged functional limitations are reasonably
consistent with objective medical and other evidence.   20 C.F.R. §§ 404.1529(c)(4) and
416.929(c)(4).

    The ALJ properly considered the entire record, including the objective and subjective
evidence, in making his determination that Plaintiff's pain and other subjective complaints did not
prevent her from performing her past relevant work.  The medical record supports the ALJ's
determination that Plaintiff can perform her past relevant work as a teacher's aide, despite her
pain.  The ALJ's decision is also supported by Plaintiff's activities of daily living.  On November
26, 2002, Plaintiff completed a daily activities questionnaire in which she indicted that she could

take care of her personal needs, did some housework, paid bills, went grocery shopping,  visited friends or relatives, went out to eat once or twice a month, and drove a car.  Tr. 94-97.  At the hearing, Plaintiff stated that she could cook a roast, cook a pot of chili, or would go out to eat.  Tr. 35, 41.  She walked a half a mile every other day, walked around her yard, pulled weeds for ten to fifteen minutes, dusted, made beds, and drove a car.  Tr. 35, 40-41.

Additional factors support the ALJ's credibility determination.  The ALJ noted that Plaintiff's work history prior to her alleged onset was sporadic, raising the question whether her unemployment was actually due to medical impairments.  See Tr. 15, 73.  Plaintiff stopped taking her prescribed pain medication and began using over-the-counter pain relievers such as Motrin or Aleve.  Tr. 33, 38.  See, e.g., Shively v. Heckler, 739 F.2d 987, 990 (4th Cir. 1984) (expressing approval of ALJ's consideration of a plaintiff's lack of strong pain medication); see also 20 C.F.R. §§ 404.1529(c)(3)  (listing "other evidence" to be considered when "determining the extent to which [claimant's] symptoms limit [claimant's] capacity for work," including, "(iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms[.]").

## CONCLUSION

Despite Plaintiff's claims, she fails to show that the Commissioner's decision was not based on substantial evidence.  This Court may not reverse a decision simply because a plaintiff has produced some evidence which might contradict the Commissioner's decision or because, if the decision was considered de novo, a different result might be reached.

This Court is charged with reviewing the case only to determine whether the findings of the Commissioner were based on substantial evidence.  See Richardson v. Perales, supra.  Even

13

where a plaintiff can produce conflicting evidence which might have resulted in a contrary decision, the Commissioner's findings must be affirmed if substantial evidence supported the decision, <u>Blalock v. Richardson</u>, <u>supra</u>.  The Commissioner is charged with resolving conflicts in the evidence, and this Court cannot reverse that decision merely because the evidence would permit a different conclusion.  <u>Shively v. Heckler</u>, <u>supra</u>.  It is, therefore,

RECOMMENDED that the Commissioner's decision be affirmed.


Respectfully submitted,


s/Joseph R. McCrorey
United States Magistrate Judge


July 29, 2005
Columbia, South Carolina